# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIFFANY D. TAYLOR, | ) | |
| Petitioner, | ) | |
| | ) | Civil Action No. 15-1532 |
| vs. | ) | Chief Magistrate Judge Maureen P. Kelly |
| | ) | |
| COMMONWEALTH OF PENN- | ) | |
| SYLVANIA; ATTORNEY GENERAL OF | ) | |
| THE STATE PENNSYLVANIA | ) | |
| Respondents. | ) | |

## OPINION

**KELLY, Chief Magistrate Judge**

Tiffany Taylor ("Petitioner") filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254, ECF No. 5, (the "Petition") seeking to challenge her convictions for fourteen counts of Robbery-Threat of Serious Injury, two counts of Aggravated Assault-Deadly Weapon, fourteen counts of Theft by Unlawful Taking or Disposition, fourteen counts of Recklessly Endangering Another Person and fourteen counts of Receiving Stolen Property in connection with the armed robbery of attendees at a house party in New Castle, Pennsylvania.

Petitioner was tried in a jury trial in the Court of Common Pleas of Lawrence County. At trial, eight of the fifteen victims identified Petitioner in court as the female member of the three-person team that broke into the party and robbed them.

In the Petition, Petitioner asserts three grounds for relief. Upon review, the Court finds that Grounds One and Two raise essentially the same claim of ineffective assistance of trial counsel and that Grounds One and Two are procedurally defaulted. As to Ground Three, the Court finds that Petitioner has not carried her burden to show entitlement to federal habeas corpus relief. Accordingly, the Petition will be dismissed. Furthermore, because jurists of

reason would not find the disposition of the Petition debatable, a Certificate of Appealability will

be denied.

# I. FACTS AND PROCEDURAL HISTORY

## A. Facts Underlying Petitioner's Conviction

The Pennsylvania Superior Court, on the direct appeal, summarized the facts of the case.

> During the late night hours of July 18, 2008, an unmasked female and two masked, gun-toting males invaded a house party in a New Castle, Pennsylvania apartment attended by approximately 15 teens. N.T. 8/21/09 at 111-117. Wielding a two-by-four piece of lumber, the female, later identified as Appellant, demanded money and/or drugs and ordered all the guests to lie on the floor, strip down to their underwear, and turn over their valuables. N.T. at 115. When one of the tenants proved unable to produce either drugs or money, Appellant struck him in the head with the two-by-four and a cohort pistol-whipped him to the point of unconsciousness. N.T. at 116-117. Another guest was also struck in the head with a gun, and the only two female partygoers were forced to strip completely naked and sit with legs spread before the intruders until the time they completed their crime and left the apartment. N.T. 8/25/09 at 15-16.
>
> While subsequently working his job at a local gas station, one victim from the party recognized a customer as the female intruder and called police. Investigators reviewed the gas station's surveillance recording and identified the suspect as Appellant. She was arrested, positively identified, and held for trial on the above noted charges.

Appendix at 2 – 3.[1]

## B. State Court Procedural History

The Superior Court, on direct appeal, described the procedural history of the case.

> Prior to trial, Appellant filed a motion *in limine* seeking the admission of mistaken identity evidence that a female named Kayla Boatner had committed a similar crime in the area about six months after the crime in question. The court ruled, however, that the other crime involving Boatner was too remote in time and dissimilar in method from the crime at issue to be admissible as

---

[1] The copy of the Superior Court's opinion supplied by the Respondents was missing every other page. ECF No. 10-1 at 994 – 1004. Accordingly, the Court contacted the Superior Court prothontary's office for a complete copy of the Superior Court's opinion, which is attached hereto as an Appendix.

misidentification evidence. The court also drew significant differences in appearance between Boatner and Appellant.

At trial, eight of the fifteen victims who took the stand were able to make in-court identifications of Appellant as the female intruder. All witnesses who recalled seeing her face testified that it was uncovered and plainly visible. Likewise, all eight witnesses identifying Appellant in court gave consistent descriptions of her as having a bigger than average build and a prominent gap between her top two teeth. One identifying witness testified that he would "never forget that face." Another identifying witness, who testified he was only three feet from Appellant and thus "could see everything," was the only witness to add that she walked with a limp. N.T. 8/21/09 at 69, 72, 79-80, 118-195; N.T. 8/24/09 at 74, 79, 107, 111, 161, 165, 194-195 N.T. 8/25/09 at 17-20, 72, 79, and 111; N.T. 8/26/09 at 15, 72[.]

On the last day of trial, Appellant moved for a continuance so she could obtain certified medical records from a Cleveland, Ohio health care provider that would confirm she had a knee injury causing a pronounced limp. This evidence, she argued to the court, was critical in that it would cast doubt on the testimony provided by all but one victim who failed to mention a limp.

The court denied Appellant's motion for continuance, finding that she knew the issue of her mobility would arise and yet elected to limit medical evidence of her knee injury to the testimony of a local treating physician. In so doing, Appellant forewent obtaining medical records from Cleveland despite having had ample time before trial to obtain them. This decision became problematic when Appellant learned the local physician would be vacationing on the week of trial. Compounding problems, in the court's opinion, was that the record cast doubt on whether Appellant had acted diligently in the wake of learning that her physician was unavailable by waiting until the last day of trial to seek records from Cleveland. The court also considered that the jury had the opportunity to observe Appellant's gait during a demonstration in open court and could determine whether her exhibited mobility was incompatible with witness descriptions of the female intruder's mobility a year earlier.

Also denied at trial was Appellant's motion for mistrial, which she raised when Commonwealth witness Charletta Waters, Appellant's former girlfriend, intimated during direct testimony that Appellant's lawyer had asked her not to testify. On defense counsel's immediate objection, the court sought clarification from Waters, who modified her testimony by stating counsel "didn't tell me not to testify. He told me what I could do, because I told him I didn't want to testify." N.T. 8/25/09 at 169. On cross-examination, moreover, Waters confirmed that she had told many people that she did not want to testify against Appellant and that defense counsel simply told her that one option she had was to plead the Fifth Amendment against self-incrimination. N.T. at 173.

At sidebar discussion, the court rejected defense counsel's contention that Waters' testimony would require him to become a fact witness in the case thus necessitating declaration of a mistrial. In the court's opinion, Waters clarified that counsel had merely informed her of legal options available to a witness who did not wish to testify; she did not accuse counsel of attempting to dissuade her

from testifying. The court then offered a curative instruction to the effect that the jury was not to infer from the witness's testimony that defense counsel wrongfully attempted to prevent her from testifying or encouraged her not to testify. Defense counsel stated that he was "fine" with the instruction both at sidebar and after the court delivered it to the jury. N.T. at 180.

To impeach Waters' testimony that Appellant had confessed to her several days after the crime, Appellant sought to admit into evidence a stipulation that an Ohio attorney by the name of Joshua Lamancusa would have testified that he represented Appellant in a Youngstown, Ohio traffic case at 10:00 a.m. on July 21, 2008. N.T. 8/27/09 at 14. As Appellant already established that she was not with Waters on either Saturday the 19th or Sunday the 20th, defense counsel argued, Lamancusa's testimony as to Appellant's whereabouts on the 21st would further undermine the credibility of Waters' claim that she heard Appellant's confession. The court denied Appellant's request for a stipulation.

Appendix at 1 – 5.

At the conclusion of the trial, the jury returned a guilty verdict on all charges. Thereafter, Petitioner was sentenced to fourteen to thirty years of incarceration.

On the direct appeal to the Superior Court, Petitioner raised six issues for review:

I. WHETHER THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A MISTRIAL RELATIVE TO THE COMMONWEALTH'S QUESTIONING OF WITNESS CHARLETTA WATERS AT TRIAL WHICH INFERRED OR IMPLIED THAT THE DEFENDANT'S ATTORNEY, STANLEY BOOKER, ENGAGED IN WITNESS TAMPERING OR UNDUE INFLUENCE?

II. WHETHER THE TRIAL COURT ERRED IN PRECLUDING DEFENDANT FROM PRESENTING EVIDENCE THAT KAYLA BOATNER AND NOT THE DEFENDANT COMMITTED THE OFFENSES FOR WHICH DEFENDANT WAS TRIED?

III. WHETHER THE TRIAL COURT ERRED IN DENYING DEFENDANT'S REQUEST FOR ADDITIONAL TIME TO INTRODUCE CERTIFIED MEDICAL RECORDS OF THE DEFENDANT WHICH SHOWED PHYSICAL CHARACTERISTICS OF THE DEFENDANT IN CONTRAST TO CRITICAL IDENTIFICATION TESTIMONY OF SEVERAL OF THE COMMONWEALTH'S WITNESSES?

IV. WHETHER THE TRIAL COURT ERRED IN PRECLUDING DEFENDANT FROM INTRODUCING A STIPULATION RELATIVE TO THE TESTIMONY OF A DEFENSE WITNESS, ATTORNEY JOSHUA LAMANCUSA?

V.    WHETHER THE TRIAL COURT ERRED IN LIMITING DEFENDANT'S USE OF A SUPPRESSED PHOTOGRAPHIC LINE-UP IN CROSS-EXAMINATION OF THE COMMONWEALTH'S WITNESS[ES] RELATIVE TO THE WITNESSES' PRIOR MISIDENTIFICATION OF THE DEFENDANT?

VI.    WHETHER THE VERDICTS OF GUILTY TO THEFT BY UNLAWFUL TAKING OR DISPOSITION AND RECEIVING STOLEN PROPERTY AS TO VICTIMS MICHAEL BOYLE, LINNELL ROBINSON, AND JORDAN ROONEY WERE AGAINST THE SUFFICIENCY OF THE EVIDENCE PRESENTED AT TRIAL?

Petitioner's Brief on direct appeal, ECF No. 10-1 at 940.

The Superior Court affirmed the convictions but remanded for resentencing, in part, while retaining the aggregate sentence of fourteen to thirty years of incarceration. Appendix at 21.

Thereafter, Petitioner filed a pro se petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-46. ECF No. 10-1 at 1029 – 1038. In the pro se form PCRA petition, Petitioner did not check a box indicating that she was raising a claim of ineffective assistance of counsel. Id. at 1030. The PCRA judge, who was also the judge that presided over Petitioner's trial, appointed Attorney Robert Barletta as counsel for Petitioner. Counsel did not file an Amended PCRA petition.

An evidentiary hearing was conducted where Petitioner's PCRA counsel attempted to assert claims that her trial counsel was ineffective for failing to procure medical records at Petitioner's trial. Petitioner contended that the medical records would have shown that the victims' testimony regarding the female perpetrator's actions taken during the robbery was inconsistent with what the medical records would have demonstrated as to Petitioner's physical limitations, given the injuries to Petitioner's right leg sustained in a prior automobile accident. The PCRA judge permitted Petitioner's PCRA counsel to introduce evidence in the form of trial

counsel's testimony concerning his failure to obtain Petitioner's medical records. Even though the PCRA trial judge permitted the testimony of Petitioner's trial counsel, the PCRA trial judge denied an oral motion by PCRA counsel to conform the PCRA Petition to the evidence presented so as to deem the PCRA Petition to be amended in order to include a claim of trial counsel's ineffectiveness. ECF No. 10-1 at 1095, lines 2 – 20. The PCRA Court denied the PCRA Petition. Id. at 1104 - 10; 1118 - 22.

Represented by new counsel, Attorney Christopher Lasich, Petitioner filed an appeal to the Pennsylvania Superior Court.[2] The Superior Court denied relief. Id. at 1185 - 93. Petitioner then filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court, id. at 1195 – 1212, which was denied. Id. at 1221.

### C. Federal Court Procedural History

In November 2015, Petitioner initiated the instant habeas proceedings by sending a pro se Petition, accompanied by an In Forma Pauperis Motion, ECF No. 1, which was granted. ECF

---

[2] In Petitioner's Brief to the Superior Court on the PCRA appeal, the following three issues were raised:

> I. Whether the trial court committed an error of law by denying her PCRA Relief by not finding that the lack of medical record or medical witness testimony was not prejudicial to the Defendant, due to admitted ineffective assistance of counsel, giving rise to a violation of her Constitutional rights?

> II. Whether the trial court committed an error of law, not supported by the evidence of record by denying the Appellant's PCRA Trial Counsel's oral motion at hearing for an amendment to her pro se PCRA Petition, reflecting the admission of Ineffective Assistance of Counsel on record at the PCRA hearing?

> III. Whether the trial court committed an error of law by not finding that her now-available medical records were post-trial exculpatory evidence under her unique facts and circumstances?

ECF No. 10-1 at 1141.

No. 4.  The Petition was filed.  ECF No. 5.  In the Petition, Petitioner raised the following three

Grounds for Relief:

> **GROUND ONE:**  Ineffective councel [sic]
> In my PCRA, my trial lawyer was asked was there anything he did during trial
> that would be considered ineffective? And he admitted "he could have got the
> medical records sooner." Then in further questioning he asserted that trial councel
> [sic] testified that he was ineffective.

ECF No. 5 at 5.

> **GROUND TWO:**  Failed to produce medical records in time
> Councel [sic] admitted it in my PCRA[.]

Id. at 7.

> **GROUND THREE:**  Improper instructions
> of government officials as listed in my concise statement [of] errors[.]  Please
> look at it in reference.[3]

Id. at 8.

Respondents filed a Response to the Petition, ECF No. 10, denying that Petitioner was

entitled to any relief.[4]  Respondents attached to the Response, copies of much of the state court

record.  Respondents also caused hard copies of much of the state court record to be transmitted

to the Clerk's Office.

---

[3] On the form Petition, Petitioner left the space for Ground Three blank and only filled out the
section of Ground Three which called for the "Supporting facts."  Nonetheless, we deem what
she wrote in that section to constitute her Ground Three for relief.

[4] Respondents are represented by the Pennsylvania Attorney General's office due to a conflict of
interest by the Lawrence County District Attorney's office. The elected District Attorney of
Lawrence County at the time of Petitioner's trial was an attorney who had previously represented
Petitioner.  Accordingly, the Attorney General's office prosecuted Petitioner and handled the
direct appeal as well as all of the PCRA proceedings.  Accordingly, the Attorney General's
office is also representing the Respondents in these habeas proceedings.   ECF No. 10-1 at 1047
– 48.

All parties have consented to have the United States Magistrate Judge exercise plenary jurisdiction.  ECF Nos. 12, 13.

## II.  APPLICATION OF THE AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996.  Because Petitioner's habeas Petition was filed after its effective date, the AEDPA is applicable to this case.  Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court expounded upon the standard found in 28 U.S.C. § 2254(d).  In Williams, the Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of  … clearly established Federal law as determined by the Supreme Court of the United States."  Id. at 404-05 (emphasis deleted).  A state court decision can be contrary to clearly established federal law in one of two ways.  First, the state courts could apply a wrong rule of law that is different from the rule of law required by the United States Supreme Court.  Secondly, the state courts can apply the correct rule of law but reach an outcome that is

different from a case decided by the United States Supreme Court where the facts are

indistinguishable between the state court case and the United States Supreme Court case.

The United States Supreme Court has made clear that the AEDPA is very difficult

standard to meet. Specifically, the Court has explained the AEDPA as follows:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. See *Lockyer, supra,* at 75, 123 S.Ct. 1166.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. Cf. *Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, 562 U.S. 86, 102–03 (2011).

The AEDPA also provides another ground for claiming relief, namely, where the state

court's adjudication of the claim "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28

U.S.C. § 2254(d)(2).

## III. DISCUSSION

### A.  Petitioner Procedurally Defaulted Grounds One and Two.

We, like the Respondents,[5] deem Grounds One and Two to be raising essentially the same claim, namely that Petitioner's trial counsel was ineffective for failing to obtain and produce certified medical records concerning Petitioner in time to have them introduced into evidence at trial.  The point of the medical records would have been to document Petitioner's injury to her knee which, before the date of the crime, was injured in a car accident, necessitating surgery to place rods and pins in the leg and which, apparently resulted in Petitioner walking with a limp.   The precise significance of those medical records is not made clear in the record. It seems that, based upon the arguments in state court, the relevance of these medical records or medical testimony was primarily for impeachment purposes.  The theory of relevance being that such evidence would go to impeaching the witnesses who identified Petitioner during the trial as the female perpetrator, but only one of those witnesses testified at the trial that the female perpetrator walked with a limp.   See, e.g., Direct Appeal Brief to Superior Court, ECF No. 10-1 at 953 ("Defendant intended to introduce the medical records to counter critical identification testimony of multiple commonwealth witnesses – specifically, that defendant walked with limp when this notable physical characteristic was absent from the statements and testimony of most of the Commonwealth's witnesses.  **R. 107 -113.**"); PCRA Appeal Brief to Superior Court, id. at

---

[5]  Respondents state that "the first two grounds for relief asserted in Taylor's habeas petition both rest on an allegation that her trial counsel was ineffective in failing to procure her medical records in time to present these documents at trial to establish and/or support her purported lack of physical agility at the time of the crime.  It appears that these claims are completely duplicative of each other, so for efficiency's sake, they will be addressed as one claim of ineffectiveness." ECF No. 10 at 11.

1152 ("The Appellant's medical records or medical witness testimony would have been used to impeach said witnesses. (R. 103, page 15)."[6]

Respondents assert that Grounds One and Two were procedurally defaulted. ECF No. 10 at 11 ("Respondents assert that this claim was procedurally defaulted as a result of Taylor's failure to properly assert a claim of ineffective assistance of counsel in her PCRA petition."). We agree and find that Grounds One and Two, which assert ineffective assistance of trial counsel for failing to earlier obtain certified medical records and for failing to introduce such medical records to have been procedurally defaulted. Petitioner never raised a claim of the ineffective assistance of trial counsel in her PCRA petition and the state courts found such issue to have been waived for failure to do so."); ECF No. 10-1 at 1186 ("Notably Appellant did not assert in her petition a claim of ineffective assistance of counsel.").

### 1. The Doctrine of Procedural Default

The doctrine of procedural default provides that if a federal habeas petitioner has either failed to present a federal claim in the state courts or failed to comply with a state procedural rule

---

[6]  It was not until much later in the course of the state proceedings, namely, in the PCRA proceedings, especially in the appeal of the PCRA petition to the Superior Court, where the theory of the relevance of the medical evidence was changed. At the PCRA appeal to the Superior Court, Petitioner was appointed new counsel, different from the attorney who represented her at the PCRA trial stage. That newly appointed appeal counsel argued that the medical evidence was "new evidence" of Petitioner's purported actual innocence of the crime. Appellate counsel's theory was, apparently, that with Petitioner's injured right leg, it was impossible for her to have perpetrated the crime. This new theory of the relevance of the medical evidence was made necessary because otherwise the only other theory of relief to which the medical evidence related was a claim of the ineffective assistance of trial counsel for failing to obtain that medical evidence, which claim of ineffectiveness, the PCRA trial court had already found to be waived. The State Courts also rejected the PCRA appellate counsel's newly concocted theory of relevance and rejected the idea that the medical evidence was "new" evidence given that it was clearly available to Petitioner and Petitioner's trial counsel long before trial. ECF No. 10-1 at 1191 – 92.

and such failure to present or to comply would provide a basis for the state courts to decline to address the federal claim on the merits, then such federal claims may not be addressed by the federal habeas court. See, e.g., Wainwright v. Sykes, 433 U.S. 72 (1977) (failure to object at trial constituted waiver of issue under state law and hence, a procedural default under federal habeas law); Francis v. Henderson, 425 U.S. 536 (1976) (failure to comply with state procedure requiring challenges to composition of grand jury be made before trial constituted state waiver and, therefore, also constituted procedural default for purposes of federal habeas); O'Sullivan v. Boerckel, 526 U.S. 838, 848-49 (1999) (failure to raise issue in discretionary appeal to state supreme court constituted a procedural default for habeas purposes). The United States Court of Appeals for the Third Circuit has explained that the "doctrine of procedural default in effect makes compliance with all relevant state-law procedural rules a precondition to federal habeas relief." Hull v. Freeman, 932 F.2d 159, 165 (3d Cir. 1991), *overruled on other grounds by*, Caswell v. Ryan, 953 F.2d 853 (3d Cir. 1992). See Smith v. Horn, 120 F.3d 400, 408 (3d Cir. 1997).

### 2. The Procedural Default by Petitioner

Under Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002), a claim of trial counsel's ineffectiveness should be raised in a PCRA petition. Id. at 738 ("We now hold that, as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review. Thus, any ineffectiveness claim will be waived only after a petitioner has had the opportunity to raise that claim on collateral review and has failed to avail himself of that opportunity.") (footnoted omitted). In her pro se PCRA Petition filed on the form utilized by state courts at the time, Petitioner did not check the box indicating that she was raising a claim of ineffective assistance of counsel. ECF No. 10-1 at 1030. We note that the PCRA court

appointed counsel for Petitioner. However, PCRA counsel never filed an amended PCRA

Petition. Hence, the operative PCRA Petition was the petition which Petitioner filed pro se on

the form where she did not check the box indicating that she was raising an ineffective assistance

of counsel claim. Notwithstanding this failure, Petitioner's PCRA counsel did call Petitioner's

trial counsel to the stand during the PCRA hearing. However, the Commonwealth's attorney

raised the issue as to the relevance of testimony from Petitioner's trial counsel given that

Petitioner failed to raise a claim of ineffective assistance of trial counsel in her pro se PCRA

Petition. Id. at 1049, lines 23 – 25; id. at 1050, lines 1 – 12. In fact, at one point in the PCRA

hearing, the attorney for the Commonwealth objected to Petitioner's trial counsel being asked

and testifying about being ineffective for not obtaining Petitioner's medical records prior to trial.

Id. at 1075, lines 9 - 14. The attorney for the Commonwealth argued that there was no allegation

contained in the PCRA Petition of ineffectiveness of trial counsel for failing to obtain the

medical evidence and the attorney for the Commonwealth noted that Petitioner "has not alleged

Mr. Booker [i.e., trial counsel] -- or Attorney Booker's failure to obtain these records constituted

ineffective assistance of counsel. For that matter, I simply think it is not an issue that's

appropriate for exploration at this hearing." Id. at 1077, lines 20 – 25; id. at 1078, line 1.

Given the foregoing, Petitioner's PCRA counsel made an oral motion at the PCRA

hearing, stating that he "would move that the PCRA petition be deemed to conform to the

testimony elicited here at the hearing." Id. at 1095, lines 2 – 4. In essence, Petitioner's PCRA

counsel requested that the PCRA petition be deemed to be amended to include a claim of trial

counsel's ineffectiveness for failing to acquire the medical evidence for trial. The

Commonwealth objected to that oral motion. id. at line 6. The PCRA trial judge asked

Petitioner's PCRA counsel for legal authority which would permit the granting of such an

amendment of the PCRA petition to conform to the testimony presented at the PCRA hearing.
Id. at lines 8 – 10.  PCRA counsel for Petitioner had no such authority with him at that time. Id.,
line 11.  Accordingly, the PCRA trial court denied the motion.  Id. lines 13 – 19.

As noted above, footnote 2, *supra*, Petitioner asserted in his appeal to the Superior Court
in the PCRA proceedings that the PCRA trial court erred in denying the oral motion to conform
the pro se PCRA petition to the evidence presented in the PCRA hearing.  The Superior Court, in
its opinion affirmed denial of PCRA relief and concluded that the PCRA trial court did not abuse
its discretion in denying the oral motion to conform the PCRA petition to include a claim of
ineffective assistance of counsel.  Id. at 1187 – 91.  Specifically, the Superior Court held that the
PCRA trial court did not abuse its discretion in denying the oral motion to conform the PCRA
petition to the evidence presented:

> The Rules of Criminal Procedure are clear and unambiguous: "Each ground relied
> upon in support of the relief requested shall be stated in the [PCRA] petition.
> Failure to state such a ground in the petition shall preclude the defendant from
> raising that ground in any proceeding for post-conviction collateral relief."
> Pa.R.Crim.P. 902(B). Appellant could have sought leave to amend her petition to
> include claims of ineffective assistance of counsel at a reasonable time before the
> PCRA hearing. The DAG [i.e., Deputy Attorney General] put Appellant on notice
> prior to any testimony being taken at the PCRA hearing that Appellant failed to
> allege any claims of ineffective assistance of counsel. Yet, it was not until all the
> evidence was presented at the hearing that Appellant requested to amend her
> PCRA petition. We can discern no abuse of discretion in the PCRA court's
> decision to deny such a tardy request.

Id. at 1190 – 91.

Hence, we find that the state courts refused to address the substantive merits of
Petitioner's claim of ineffective assistance of trial counsel based on her failure to include such a
claim in the actual petition and based upon Pa.R.Crim.P. 902(b) and that such refusal to consider
the claim or refusal to permit an amendment to the PCRA petition to include such a claim rested
on an independent an adequate state law ground.  The reliance of the state courts on such an

independent and adequate state law ground constitutes a procedural default for purposes of federal habeas relief. See, e.g., Thomas v. Sec., Pennsylvania Dept. of Corrections, 495 F. App'x 200, 206 (3d Cir. 2012) ("Wayne's ineffective assistance claim based on trial counsel's failure to present evidence that was promised during opening statements is procedurally defaulted because Wayne did not comply with the clear and unambiguous Pennsylvania rules that require each claim to be separately and explicitly asserted in the PCRA petition. See Pa. R.Crim. P. 902(B); Pa. R.App. P. 302(a)."). See also Beard v. Kinder, 558 U.S. 53 (2009) (procedural default can be based on a purely discretionary state rule of procedure).

### 3. Neither Exception to Procedural Default is Applicable.

There are two exceptions to the procedural default doctrine. A federal legal issue that was not properly raised in the state courts and, therefore, procedurally defaulted may nonetheless be addressed by a federal habeas court if the petitioner shows cause for, and actual prejudice stemming from, the procedural default. Wainwright v. Sykes, 433 U.S. at 87 – 91. In order "[t]o show cause, a petitioner must prove 'that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.' Murray v. Carrier, 477 U.S. 478, 488 (1986)." Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996). In order to show actual prejudice, "the habeas petitioner must prove not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage . . . . This standard essentially requires the petitioner to show he was denied 'fundamental fairness[.]'" Werts v. Vaughn, 228 F.3d at 193 (citations and some internal quotations omitted). The second exception permits a federal court to address the merits of a procedurally defaulted claim where the petitioner can establish a "miscarriage of justice." In Werts, the United States Court of Appeals for the Third Circuit explained this exception as follows:

> [I]f the petitioner fails to demonstrate cause and prejudice for the default, the federal habeas court may still review an otherwise procedurally defaulted claim upon a showing that failure to review the federal habeas claim will result in a "miscarriage of justice." Generally, this exception will apply only in extraordinary cases, i.e., "where a constitutional violation has probably resulted in the conviction of one who is actually innocent...." [*Murray v. Carrier*, 477 U.S. 478] at 496 [(1986)]. Thus, to establish a miscarriage of justice, the petitioner must prove that it is more likely than not that no reasonable juror would have convicted him. *Schlup v. Delo*, 513 U.S. 298, 326 (1995).

Id.

Moreover, a federal habeas court may decide that a habeas petitioner has procedurally defaulted a claim even though no state court has previously decided that the claim was procedurally barred under state law. See, e.g., Carter v. Vaughn, 62 F.3d 591, 595 (3d Cir. 1995) (requiring the federal district court to determine whether the petitioner's failure to appeal in the state court constituted a waiver under state procedural law that barred state courts from considering the merits and, therefore, constituted a procedural default for habeas purposes even though no state court had made a determination that petitioner's failure to appeal constituted waiver under state law); Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998). Lastly, if a petitioner has committed a procedural default and has not shown either cause and prejudice or a miscarriage of justice, the proper disposition is to dismiss the procedurally defaulted claim with prejudice. See, e.g., Wainwright v. Sykes; McClain v. Deuth, 151 F.3d 1033 (Table), 1998 WL 516804, at *2 (7th Cir. 1998); Redeagle-Belgarde v. Wood, 199 F.3d 1333 (Table), 1999 WL 985164, at *4 (9th Cir. 1999); McNary v. Farley, 16 F.3d 1225 (Table), 1994 WL 59278, at *3 n.3 (7th Cir. 1994); Thompson v. Champion, 996 F.2d 311 (Table), 1993 WL 170924, at *3 (10th Cir. 1993).

Notwithstanding the fact that Respondents raised the defense of procedural default, Petitioner did not file a traverse to claim cause and prejudice or a miscarriage of justice.

Petitioner does not deny, and indeed, on the record before this Court, could not reasonably deny that she has procedurally defaulted the first two Grounds for Relief. Moreover, given that she does not address the issue of procedural default, Petitioner does not argue, as is her burden,[7] that there is cause and prejudice to excuse her procedural default or that she comes within the actual innocence exception. Accordingly, we find that Grounds One and Two have been procedurally defaulted and that Petitioner has failed to show cause and prejudice or a miscarriage of justice as is her burden.

### 4. **Martinez** does not provide cause to excuse the procedural default

As Respondents point out, Petitioner cannot succeed on a claim of cause based upon Martinez v. Ryan, 132 S.Ct. 1309 (2012). ECF No. 10 at 11 – 12.

The decision of the United States Supreme Court in Martinez v. Ryan created a sea change in the doctrine of procedural default, holding for the first time that a claim of ineffective assistance of post-conviction relief counsel could serve as cause to excuse the procedural default of a claim of trial counsel's ineffectiveness. However, the Supreme Court in Trevino v. Thaler, 133 S.Ct. 1911, 1918 (2013) explained that Martinez only permits a federal habeas court to find "cause" based on post conviction counsel's ineffectiveness and "thereby excus[e] a defendant's procedural default, where (1) the claim of 'ineffective assistance of trial counsel' was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of- trial-counsel

---

[7] Suber v. Kerestes, No. CIV.A. 09-1049, 2011 WL 500763, at *3 (W.D. Pa. Feb. 10, 2011) ("Because Petitioner has not shown, as is his burden, cause and prejudice to excuse the default of this claim, nor has he established a miscarriage of justice, this claim cannot be addressed on the merits and thus, cannot serve to afford Petitioner relief from his convictions.") (footnotes omitted).

claim'; and (4) state law requires that an 'ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."  We find that Petitioner's putative claim of "cause" falters on the first prong, i.e., falters on the ground that the claim that trial counsel was ineffective for not obtaining the medical evidence was not a substantial claim.

Petitioner cannot not show under <u>Martinez</u> that the claims of trial counsel's alleged ineffectiveness were "substantial" within the contemplation of <u>Trevino</u>.  As the United States Court of Appeals for the Third Circuit explained in <u>Jones v. Pennsylvania Bd. of Prob. & Parole</u>, 492 F. App'x 242, 244-45 (3d Cir. 2012): "With respect to what constitutes a 'substantial' claim, the Court suggested, by citing *Miller–El v. Cockrell*, 537 U.S. 322 (2003) (describing standards for certificates of appealability to issue), that courts should apply the standard for issuance of certificates of appealability."  <u>Accord</u> <u>Branthafer v. Glunt</u>, No. 3:14-CV-294, 2015 WL 5569128, at *16 (M.D. Pa. Sept. 22, 2015) ("a petitioner must 'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.' 537 U.S. at 336 (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)). The determination requires an overview, not full consideration of the factual and legal bases of the claims.") (some internal quotations omitted).

We conclude that Petitioner's procedurally defaulted claim of trial counsel's ineffectiveness for not introducing medical evidence is not "substantial" because there is not a reasonable likelihood that the outcome of Petitioner's trial would have been different had the medical records been introduced, i.e., there is no substantial question as to whether she suffered prejudice.   We come to this conclusion based in part on the Superior Court's reasoning in the direct appeal.

In the direct appeal, Petitioner raised the claim that the trial court had erred in not giving

Petitioner a requested continuance at the end of the testimony at the trial in order to obtain the

medical records.   The Superior Court rejected this claim and reasoned as follows:

> Applying the standards to the present case, we discern no error with the court's refusal to grant a continuance on the last day of trial so that defendant could obtain out-of-state records to impeach the testimonial capacity of eyewitnesses who testified as much as six days earlier. Indeed, of the fifteen eyewitnesses who testified over the course of five trial days, only one witness noted that the female intruder walked with a limp. Appellant therefore had ample time to ascertain whether her local doctor would be available for trial and, if not, to obtain medical records from Cleveland, Ohio before trial's end.
>
> Moreover, the degree to which introduction of such records would have strengthened Appellant's defense appears negligible. First, as noted above, the jury witnessed eight adamant, in-court identifications made with specific reference to Appellant's large build and the prominent gap between her teeth. That the witnesses did  not discuss her limp falls well short of negating such detailed and consistent identifications. Moreover, the jury witnessed a demonstration whereby Appellant walked approximately 10 feet around counsel's table, approached the jury, displayed her teeth, and walked an additional 10 feet back to her chair. N.T. 8/27/09 at 11-12. This demonstration, therefore, enabled the jury to see her gait  and  consider whether it could have possibly escaped the attention or recollection of all but one witness subjected to an extreme attack.  As Appellant therefore  had ample opportunity to present evidence of her limp and, in any event, exhibited it before the jury, no reversible error attended the trial court's denial of her motion to continue.

Appendix at 15 – 16.  We fully agree with the foregoing analysis that the impact of the medical

evidence would have been negligible on impeaching the identification testimony of the eight

victim/witnesses at trial who positively identified Petitioner as one of the perpetrators given their

description of her as a heavy set African-American female who had a large gap in her upper front

teeth.  Therefore, we conclude that the medical evidence would not have impeached the multiple

identifications of Petitioner as the female perpetrator, especially since none of the witnesses were

specifically asked about the perpetrator's gait.

Hence, we find that the alleged ineffectiveness of trial counsel does not constitute a

substantial claim of ineffectiveness and, therefore, Petitioner cannot show cause under <u>Martinez</u>.

Nor do we find, based on our review of the testimony at trial and the PCRA hearing and the record before this Court that Petitioner could establish a miscarriage of justice. Petitioner points to no new evidence of her actual innocence. To the extent that Petitioner would point to the medical evidence, we find, like the state courts, that the medical evidence is not "new" as is required. Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001) (in order to make a showing of a gateway "actual innocence" claim, a petitioner "must satisfy a two-part test in order to obtain review of otherwise procedurally barred claims. First, the petitioner's allegations of constitutional error must be supported with new reliable evidence not available at trial. *Schlup*, 513 U.S. at 327-28.").

Accordingly, we find Grounds One and Two to have been procedurally defaulted and Petitioner has not carried her burden to show cause and prejudice or a miscarriage of justice.

**B. Ground Three does not merit relief in these federal habeas proceedings.**

In Ground Three, Petitioner complains of "improper instructions [sic] of government officials as listed in my concise statement [of] errors." ECF No. 5 at 8. Respondents note that they are at a loss to accurately decipher what this claim is actually alleging. ECF No. 10 at 14.

The Court confesses to some confusion as well. The Court has reviewed both Petitioner's "Pa.R.A.P. 1925(b)(1) STATEMENT OF MATTERS COMPLAINED OF ON APPEAL", ECF No. 10-1 at 899 – 901, filed in the direct appeal and Petitioner's "CONCISE STATEMENT OF ERRORS COMPLAINED OF ON APPEAL," id. at 1112 – 16, filed in the PCRA appeal. We do so because Petitioner herself directs us to her "concise statement of errors." However, neither of these filings attack any "instructions."

Nevertheless, the Court suspects that the claim is not about "instructions" but rather about alleged "obstruction" by government officials. We reach this conclusion based upon the

following three considerations.  First, in Petitioner's pro se PCRA Petition, she checked the box

indicating that she was raising a claim concerning the "improper obstruction by government

officials of the petitioner's right of appeal where a meritorious appealable issue existed and was

properly preserved in the trial court."  Id. at 1030.   Secondly, the PCRA trial court addressed

this issue noting that:

> Finally, the Defendant also asserts she is entitled to PCRA relief on the
> basis of improper obstruction by government officials of the petitioner's right of
> appeal where a meritorious appealable issue existed and was properly preserved
> in the trial court.  The Defendant has not asserted any facts, testimony or evidence
> in support of this allegation, nor has the Defendant presented any argument in
> support of this allegation.  As a result, Court is unable to address this claim and
> the Defendant is not entitled to relief under this theory.  Based upon the
> foregoing, the Defendant's Petition for Post-Conviction Collateral Relief is
> DENIED.

Id. at 1110.

Thirdly, in attachments to the Petition that she filed in this Court, Petitioner included

letters complaining about her pro se notice of appeal to the Superior Court in the PCRA

proceedings being possibly rejected because she had counsel of record at the time of her filing

the pro se notice of appeal.  ECF No. 5-1 at 30 – 31.  Based upon these three considerations, we

deem Petitioner to be making in Ground Three a claim that her appellate rights were somehow

unconstitutionally obstructed based upon the no-hybrid representation rule in Pennsylvania that

precludes consideration of pro se filings where the litigant is represented by counsel at the time

of the filing of the pro se paper.

Thus construed, we find that Ground Three in the Petition does not merit any relief in

these federal habeas proceedings because Petitioner does not identify any specific issue that she

wanted to be raised on appeal in the PCRA proceedings that was not raised by her appointed

appellate counsel but that was raised by her in some pro se filing.  Nor do we find that the

Pennsylvania prohibition on hybrid representation is itself a violation of any federal constitutional right. There is no constitutional right to hybrid representation. In re Green, 637 F. App'x 62, 63 (3d Cir. 2016) ("Green is not entitled to mandamus relief regarding that order because there is no right to hybrid representation. *See United States v. Turner*, 677 F.3d 570, 578 (3d Cir. 2012)."); Wilson v. Hurt, 29 F. App'x 324, 327 (6th Cir. 2002) ("he has no constitutional right to demand 'hybrid representation'"); Myers v. Johnson, 76 F.3d 1330, 1335 (5th Cir. 1996) ("there is no constitutional right to hybrid representation"); U.S. v. Einfeldt, 138 F.3d 373, 378 (8th Cir. 1998) ("There is no constitutional right to hybrid representation").

Accordingly, Ground Three does not merit any federal habeas relief.

## IV. CERTIFICATE OF APPEALABILITY

Because we conclude that jurists of reason would not find the foregoing debatable, a Certificate of Appealability is denied.

## V. CONCLUSION

For the reasons set forth herein, the Petition is dismissed and a Certificate of Appealability is denied.


BY THE COURT:

Date: January 16, 2018     s/Maureen P. Kelly
                           MAUREEN P. KELLY
                           CHIEF UNITED STATES MAGISTRATE JUDGE


cc:     All Counsel of record via CM-ECF

        TIFFANY D. TAYLOR
        OP 8173
        SCI Cambridge Springs
        451 Fullerton Avenue
        Cambridge Springs, PA 16403

# APPENDIX